WESTERN ELECTRIC CO. v. GALESBURG UNION TELEPHONE CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 26, 1906.)

No. 1,163.

PATENTS—INFRINGEMENT—TELEPHONE SWITCHBOARDS.

The Scribner patent, No. 669,708, for apparatus for telephone switchboards, the principal feature of which is the use of electric lamps as signals to indicate whether a line with which connection is made is free or busy, together with the mechanical means shown for operating such signals, construed, and, as limited by the prior art, *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern Division of the Northern District of Illinois.

The suit in the Circuit Court was to restrain infringement of letters patent No. 669,708, issued March 12, 1901, for an improvement in apparatus for telephone switchboards.

The claims relied upon are 6, 7, 8, and 11. as follows:

6. The combination with a telephone-line, of a relay responding to currents in the line, a local circuit including a source of current, a resistance-coil, and a line-signal lamp, controlled by the relay, the line-signal being associated with a spring-jack of the line, a connecting-plug for use with the spring-jack, a clearing-out-signal lamp associated with the connecting-plug, and switch-contacts adapted to close a shunt-circuit through the clearing-out-signal lamp about the line-signal lamp and the contact-points of the relay when the plug is inserted into the spring-jack, substantially as described.

7. The combination with a telephone-line provided with a switch at the substation for closing the line-circuit while the telephone is in use, of a relay and a source of current in the line at the central station, a spring-jack connected with the line, a line-signal lamp associated with the spring-jack, a local circuit controlled by the relay including the line-signal lamp, a branch from one terminal of the signal-lamp to an insulated contact-piece in the spring-jack, a plug for making connection with the line, a conductor terminating in a contact-piece in the plug adapted to register with the said insulated contact-piece in the spring-jack, forming the terminal of a conductor including a clearing-out-signal lamp and connected with the remaining terminal of the line-signal lamp, substantially as described.

8. In combination, two telephone-lines, each terminating in a spring-jack and each including a relay and a source of current adapted to respond to current in the line during the use of the substation instruments, a connecting-plug in each spring-jack, a device in each plug-circuit for permitting the transmission of telephonic current therein but preventing the passage of continuous current from one plug to the other, a line-signal associated with the spring-jack of each line, and a clearing-out signal associated with each connecting-plug, the line-signal of one line and the corresponding clearing-out signal being in parallel branches of a local circuit, the conductor including each line-signal being controlled by the corresponding line-relay, whereby clearing-out signals are substituted for the line-signals and currents in the different lines are caused to give independent signals.

11. In a testing device for multiple switchboards, the combination with test-contacts in the different spring-jacks of a line, of a source of current permanently connected through a resistance-coil with the test-contacts, a connecting-plug and a contact-piece therein adapted to register with said test-contacts and forming the terminal of a conductor connected with the free pole of said battery, another connecting-plug and a similar contact-piece therein, a signal-lamp in the conductor terminating in the said contact-piece, said lamp being adapted to be illuminated by the full current through the resistance-coil, whereby the presence of an existing connection is auto-

matically indicated when the last-mentioned connecting-plug is inserted into the spring-jack.

The material portion of the description is as follows:

My invention relates to the signaling and testing appliances of telephone-switchboards.

It comprises two co-operative features which concern, respectively,, the transmission of signals from the substation of a telephone-line to the telephone-switchboard and the indication of the free or "busy" condition of a line to an operator making connection with it. The objects of the first mentioned feature are to effect the transmission of the signals for connection and disconnection at the telephone-switchboard automatically in the use of the substation apparatus and to efface the call-signal and substitute for this signaling instrument a different signaling device adapted to respond to the signal for disconnection. The object of the second feature is to indicate automatically to an operator establishing connection with a line at any section of the switchboard whether the line be free for use or not, in order that she may not interfere with a connection already existing.

My invention involves the use of annunciators or signals which are adapted to be operated or excited by a predetermined normal current, but to remain inert when traversed by a current materially less—as, for example, by half of the normal current. In practice incandescent lamps are found to be suitable signals of this type, being illuminated by a suitable current, but remaining unlighted when traversed by half of this current.

My invention consists in arranging two such signals in parallel branches of a local circuit and in controlling the continuity of one of the branches by a relay responding to currents in the telephone-line. The signal in the branch controlled by the relay is designed to act as an individual signal and is permanently associated with a particular line. The other signal may be associated with one of the plug-circuits provided for uniting different telephone-lines, and the branch including it may be normally open, terminating in a contact-piece in the connecting-plug adapted to complete the branch while the plug is in use in a spring-jack.

In the normal condition of the apparatus at the switchboard the individual signal is free to respond to currents in the corresponding line-circuit caused by the completion or interruption of the line-circuit at the substation, and thus by its display may indicate an initial or call signal from the substation. When, however, in response to such a signal connection has been made with the line, the other of the two branches is closed through the clearing-out or disconnection signal, whereby the indication of the individual signal is effaced, the clearing-out signal remaining inert. The signals remain in this condition until the relay, responding to an altered condition of the line-circuit, opens the branch including the individual signal, whereby the clearing-out signal is excited.

In a suitable form of my invention the substation of each telephone-line is provided with a switch, preferably an automatic telephone-switch, by which the normally high-resistance or open-line circuit may be closed during the use of the telephone at the substation, and in the switchboard at the central station, a relay and a source of current are included in the line-circuit, the contact-points of the relay being adapted when the relay is excited to complete the branch of the before-mentioned local circuit which includes the individual signal corresponding to the line. The interrupted portions of the other branch of the local circuit terminate, respectively, in a contact-piece in each of the spring-jacks of the line, and in a corresponding contact-piece upon the connecting-plug which is designed to be inserted in the spring-jack to establish connection with the line. The source of current in the local circuit is common to the different pairs of plugs in the switchboard, and these are therefore interchangeable with respect to their use in different spring-jacks. Hence, any plug may be used in connection with any spring-jack without interfering with the operation of the associated clearing-out signal. In a switchboard system thus organized the removal of the telephone from the switch-hook at a substation causes the excitement of the relay in that line at the central station and thus operates or excites the corresponding individual signal in the switchboard. The operator thereupon inserts a plug into the spring-jack, effacing

the indication of the individual signal. The clearing-out signal still remains inert, since the current in the local circuit is divided between the two signals. When, however, the telephone at the substation is replaced upon its switch-hook, the circuit of the line is interrupted, the relay is no longer excited, and it interrupts the branch of the local circuit including the individual signal, thus diverting the full current through the clearing-out signal and causing the latter signal to be displayed.

If a connecting-plug be inserted in a line which is free—that is, which is not already in use—the clearing-out signal remains excited until the substation-telephone is brought into use, since the circuit through the individual signal of the corresponding line is interrupted until that time; but if a plug be inserted into a spring-jack of a line whose telephone is already in use or with which a connection already exists, either one or two branches of the local circuit will have been already completed, so that the clearing-out signal of the plug last inserted into a spring-jack of the line will remain inert. The condition of the clearing-out signal therefore constitutes a "test" which signifies the free or busy condition of the line with which connection is made. In a multiple switchboard the test thus becomes automatic and is indicated by a suitable visible signal.

The accompanying drawing represents diagrammatically the disposition of the apparatus of my invention.

In the drawing two substations A and B are shown, each connected, through line conductors, with spring-jacks upon different sections of a multiple switchboard and with a relay controlling an individual signal. The apparatus at the substations comprises a receiving-telephone $c$ and a transmitting-telephone $c'$, a signal-bell $c^2$, and an automatic switch $c^3$, arranged to close the line-circuit alternately through the telephonic and signaling appliances.

The apparatus of substation A is connected by line conductors 1 and 2 with two spring-jacks $d$ and $d'$ upon different sections $e$ and $e'$ of a multiple switchboard at the central station, the different line conductors terminating in different line-contacts $f$ and $f'$, respectively, in each of the spring-jacks. The conductor 1 of the line is extended, through an impedance-coil $g$, to one pole of a battery $h$, while conductor 2 is connected with the other pole of battery $h$, a line-relay $i$ being included in the conductor. The battery $h$ and relay $i$ are so adjusted to the resistance in the line-circuit that when the circuit is closed through the bell $c^2$, which should be of high resistance, the relay is not appreciably excited, while when the circuit is closed at the substation through the telephone the relay shall attract its armature.

The contact-points $k, k'$ of relay $i$ are included in a branch 3 of the local circuit 3 4 of a battery $l$, a resistance-coil $m$ being connected in the local circuit. The branch 3 includes also the individual signal-lamp $i$, which is associated with the spring-jack $d'$ in the switchboard. Each spring-jack is provided with a contact-ring $f^2$, the different contact-rings being connected together through a wire 5, which is connected with the conductor 4 of the local circuit.

Connecting-plugs $o$ and $o'$ are provided for looping different telephone-lines together by means of their spring-jacks. Each plug contains two contact-pieces $p$ and $p'$, which are adapted to make connection with the line-contacts $f$ and $f'$ of the spring-jack, and another contact-piece $p^2$, which is arranged to connect with the ring $f^2$ of the spring-jack. The contact-pieces $p$ of the two plugs are connected together through a conductor 6 and the pieces $p'$ by another conductor 7. Each of these conductors includes a condenser, the condensers being designated $q$ and $q'$, respectively. The conductors 6 and 7 extend through the switch-contacts of a calling-key $r$, by means of which a generator $s$ of signaling-current may be looped into connection with the plug $o'$, and branches from them are led to the switch-springs of a listening-key $t$ for connecting the operator's telephone $u$ with the plug-circuit.

The contact-piece $p^2$ of plug $o$ constitutes the terminal of a conductor 8, including the clearing-out signal-lamp $v$, which is associated with that plug. Contact-piece $p^2$ of plug $o'$ similarly constitutes the terminal of an-

other conductor 9, including lamp-signal $v'$ associated with plug $o'$. Conductors 8 and 9 extend directly to the local battery $l$.

The drawing represents the apparatus in its normal or idle position. The telephones at the substations rest upon their switch-hooks, so that the line-circuits are closed only through the high-resistance signal-bells $c^2$. The relays $i$ are therefore not excited and the individual signal-lamps remain unlighted.

Assume, to illustrate the operation of the system, that subscriber at station A wishes to communicate with subscriber at station B. He removes his telephone-receiver $c$ from its switch-hook. Current then finds circuit from battery $h$ through relay $i$ and the telephone at the substation. The relay draws its armature forward, thus closing the branch circuit 3 and illuminating signal-lamp $n$. The operator perceives this signal and inserts plug $o$ into the corresponding spring-jack $d'$, at the same time connecting her telephone set $u$ with the plug-circuit 6 7 by means of listening-key $t$. The operator is thus placed in telephonic communication with the subscriber at station A, the circuit being through line conductors 1 and 2, contacts $f$ $f'$ of the spring-jack, and portions of the conductors 6 and 7 of the plug-circuit. She is thus in position to learn his order for the connection required. By the insertion of the plug into the spring-jack the contact-piece $p^3$ is brought into connection with the contact-ring $f^2$ of the spring-jack, thus closing together conductor 5, terminating in the spring-jack, and conductor 8, terminating in the plug, and completing the circuit through the signal $v$. The two conductors 3 and 5 8, including the individual signal $n$ and the clearing-out-signal $v$, respectively, are thus brought into parallel connection with each other in the local circuit, including conductor 4 and resistance-coil $m$. The current through the resistance-coil, which is sufficient to light a signal-lamp, is now distributed to the two lamps, so that neither of these is illuminated—that is, when the plug is inserted into the spring-jack the individual signal is extinguished, while the clearing-out signal remains still unlighted. When the operator has learned the order of subscriber at station A, she inserts plug $o'$ into the spring-jack $d^2$ of line to station B. The branch 9, terminating in plug $o'$, is now closed to the conductor 5, terminating in spring-jack $d^2$, and the local circuit is completed through the lamp-signal $v'$. It will be noted, however, that the line-circuit 10 11 of this line includes only the signal-bell $c^2$ at station B, the telephone-receiver being still on the switch-hook, so that relay $i$ of that line is not excited and the circuit through its individual signal is not complete. Hence, the signal $v'$ receives its full normal current and is illuminated. If the circuit were closed through the telephone at the substation, the branch circuit 3 through the individual lamp-signal would be closed and lamp $v'$ would of course not be illuminated. It may be noted here also that if a connection already existed with the same line—as, for example, if a plug were inserted in spring-jack $d^3$ at section $e$ of the switchboard—a branch 9 through a clearing-out-signal would be already connected to conductor 5, terminating in the spring-jack $d^3$, so that when the operator inserted plug $o'$ into jack $d^2$ the necessary condition for preventing the illumination of the lamps would be fulfilled—that is, two branches, including lamp-signals, would be placed in parallel connection. Thus the lamp-signal $v'$ would remain unlighted in either of two events—namely, if the subscriber at substation B had already removed his telephone from its switch-hook or if a connection already existed with the line at another section of the switchboard—whether the substation apparatus were in use or not. The illumination of the signal-lamp $v'$ upon the insertion of plug $o'$ into jack $d^2$ thus constitutes an automatic test-signal and signifies to the operator that the line is not in use. The line tests "busy" to operators desiring to make connection with it from the moment the subscriber removes his telephone from its switch-hook, while the required connection exists with the line and until the connecting-plug is finally withdrawn from the spring-jack. Assuming that the operator finds the line to station B free, she manipulates the calling-key $r$, and thus transmits to station B a signaling-current, which rings the bell $c^2$. When the subscriber at that station in response to this signal removes his telephone from its switch-hook, the signal $v'$ is extinguished. The operator is thus assured that the calling sub-

scriber is in communication with his correspondent at station B without the necessity of making any oral inquiry. When either subscriber, as subscriber at station A, replaces his telephone upon its switch-hook, the line-relay in the corresponding line releases its armature, and thus interrupts the branch 3 through the individual signal. The full current through conductor 4 is now diverted through conductors 5 and 8 and the clearing-out signal $v$ is illuminated. In practice the operator does not disturb the connection until both clearing-out signals $v$ and $v'$ have become thus illuminated, which indicates that the subscribers have completed their conversation and both have replaced their telephones. She then removes the connecting-plugs from the spring-jacks of the united lines.

It is obvious that numerous other arrangements of the signal-lamps might be made by which they could be brought into parallel circuit with each other during connection with the line and by which one or the other should be caused to give a signal.

The drawings illustrative of the appellant's system are as follows:

Appellees' system is illustrated in the opinion.

The portion of patent No. 559,616 pertinent to this case is as follows:

A secondary object is to provide for independent signals in the circuits of telephone-lines adapted to be automatically operated by the alteration of the circuits at the substation in the use or disuse of the telephone. * * *

It has been found desirable in practice to provide signals in connection with the line-circuits which shall be automatically controlled by the position of the telephonic apparatus at the substations, their indicators being displayed or concealed as the telephone is brought into use or returned to its normal position. Such signals ordinarily comprise a line-signal permanently connected with each line, which is adapted to display its indicator when the telephone is removed from its switch-hook for use, and a pair of clearing-out signals in each loop-conductor for uniting telephone-lines, the two clearing-out signals of each plug-circuit being adapted to operate independently, each serving to notify the operator of the replacement of the telephone of the line with which it is more directly connected.

A feature of my invention consists in the combination, with the before-described system of current distribution, of line and clearing-out signals. I connect with each line, as heretofore, a line signal or annunciator of considerable resistance, the free terminal of the signal being connected to one pole of the source of electric current which it is designed to employ in supplying the substation-microphones; and I provide the impedance-coils of the current-supply system with suitable mechanism for operating indicators, thus converting them into signaling instruments. The impedance-coils are constructed to have comparatively low ohmic resistance, whereby, when they are brought into circuit with telephone-lines, the current through the line-signal is shunted and the latter returns to its normal position.

In the idle condition of the line the line-signal remains inert, the line-circuit being open at the substation. When the apparatus there is brought into position for use, as by removing the telephone from its switch-hook, the line-circuit is closed through the telephone and microphone and the line-annunciator is operated by the current which finds circuit through it from the common battery or other source of supply. When connection is made with the line in the usual way, the line-signal is shunted and becomes again inert, the clearing-out signal is displayed, and suitable current for operating the substation-microphone is put upon the line. Upon the return of the substation apparatus to its normal position the clearing-out signal signifies this condition.

Hitherto it has been necessary to include the clearing-out signals directly in the line-circuit, in which position their impedance and resistance have been detrimental to telephonic transmission. In the arrangement which I have invented, however, it will be noted that independence of operation of the signals is secured, while their resistance is eliminated from the telephonic circuit. At the same time a simple and particularly effective mode of rendering the line-signal inert and insuring its return to its normal condition is provided.

Referring now to Fig. 2, similar telephonic appliances are indicated at the substations A and B, together with a signal-bell $c^2$, a condenser $c^3$ in circuit with it, and a telephone switch-hook $c^4$, from which the telephone is normally suspended, the switch being adapted to connect the telephone and the bell alternately in the line-circuit as the telephone is removed from or replaced upon its support. The line-wire 1 from station A is connected with one line-contact of a spring-jack $g$ in a telephone-switchboard at the central station and with one terminal of a signaling instrument $h$, whose other terminal is connected with one pole of the common battery $f$. This signal should be of moderately high resistance—as, for example, five hundred ohms—and should be so constructed as to fail to respond to alternating currents such as employed for operating the substation-bells. The line conductor 2 from station A is likewise connected with a line-contact of spring-jack $g$, and is also connected to earth through an impedance-coil $c^2$. The line-circuit from station B is connected with similar apparatus in the switchboard.

At the switchboard a number of plugs, with their accessory circuits and switches, are provided, but one pair being shown, however. The plug $i$ and $i'$ are constructed each with two contact-points $k$ and $k'$, adapted to register with the two line-contacts of a spring-jack. The tips $k$ of the two plugs are united by a conductor 6 and the sleeves $k'$ by a conductor 7. A condenser $d$ is included in the conductor 6. From the severed portions of this conductor branches 3 and 4 are taken to one pole of battery $f$, the other pole of the battery being connected to earth. In the branches 3 and 4 signals $e$ and $e'$ are included, the electromagnets of the signals being constructed to have sufficient impedance to permit them to perform the functions of the impedance-coils described in connection with Fig. 1. An operator's listening key $l$ is furnished to enable the operator to connect her telephone set $m$ with the plug-circuit 6 7, and a calling-key $n$ for looping a generator $o$ of signaling-current, suitable for operating bells $o^2$, into circuit with plug $i'$.

144 F.—44

When the subscriber at station A desires to converse with the subscriber at another substation—as, for example, at station B—he removes his telephone $c$ from the switch-hook $C^4$, thus permitting the latter to close the hitherto open circuit between conductors 1 and 2 through the telephone $c$ and microphone $c'$. Current from battery $f$ then finds circuit through signal $h$ and line conductor 1 to line 2, and thence through the impedance-coil $E^2$ at the central station. The signal is thus excited and indicates the call to the attendant, who in response inserts plug $i$ into the spring-jack $g$ of the corresponding line, at the same time bringing the telephone $m$ into connection with the plug-circuit. Battery $f$ is now provided with a circuit of much lower resistance through signal $e$ and conductor 6 of the plug circuit to the line-wire 1, returning through the line 2 and impedance-coil $e^2$. The current suitable for the operation of the microphone is thus obtained at the substation. In the new arrangement of the circuits the impedance-coil $e$ of low resistance is in shunt of the signal $h$ of high resistance, and the latter, being practically short-circuited, becomes inert and returns to its normal position. Having learned the subscriber's order, the operator inserts plug $i'$ into spring-jack of line to station B and depresses the plunger of calling-key $n$, thus ringing bell $c^2$ at station B. When the subscriber at this station has responded and has removed his telephone from its switch-hook, the telephonic appliances at the substations are united in a complete metallic circuit, including condenser $d$, both stations being supplied with current from battery $f$. Conversation may then take place, as described in connection with Fig. 1. When either telephone is replaced upon its switch-hook, the circuit of battery $f$ through that line is interrupted at condenser $c^3$, whereby the corresponding clearing-out signal $e$ or $e'$, becomes demagnetized and returns to its inert position, displaying a suitable signal to indicate to the operator the position of the apparatus at the substation. The display of both signals may be interpreted as signifying that the conversation is terminated and the connection between the lines may be removed.

And the pertinent drawing as follows:

FIG. 1

FIG. 2

Other patents cited are as follows:

No. 125,587, April 9, 1872. George Little.
No. 166,305, Aug. 3, 1875, W. E. Sawyer.
No. 208,463, Oct. 1, 1878. C. A. Cheever.
No. 232,678, Sept. 28, 1880, C. E. Buell.
Reissue No. 9,458, Nov. 9, 1880, S. D. Field.
No. 243,312, June 21, 1881, C. E. Scribner.
No. 248,815, Oct. 25, 1881, T. A. Watson.
No. 251,555, Dec. 27, 1881, T. A. Edison.
No. 264,642, Sept. 19, 1882, T. A. Edison.
No. 264,658, Sept. 19, 1882, T. A. Edison.
No. 264,661, Sept. 19, 1882, T. A. Edison.
No. 264,662, Sept. 19, 1882, T. A. Edison.
No. 264,663, Sept. 19, 1882, T. A. Edison.
No. 264,665, Sept. 19, 1882, T. A. Edison.
No. 264,667, Sept. 19, 1882, T. A. Edison.
No. 264,668, Sept. 19, 1882, T. A. Edison.
No. 264,669, Sept. 19, 1882, T. A. Edison.
No. 264,670, Sept. 19, 1882, T. A. Edison.
No. 264,671, Sept. 19, 1882, T. A. Edison.
No. 264,672, Sept. 19, 1882, T. A. Edison.
No. 264,673, Sept. 19, 1882, T. A. Edison.
No. 265,028. Sept. 26, 1882, C. W. Coy.
No. 266,793, Oct. 31, 1882. T. A. Edison.
No. 283,312, Aug. 14, 1883, C. H. Wilson.
No. 285,245, Sept. 18, 1883, J. E. Fenn.
No. 293,198, Feb. 5, 1884, C. E. Scribner.
No. 293,495, Feb. 12, 1884. O. A. Moses.
No. 346,708, Aug. 3, 1886, C. A. Bell.
No. 349,109, Sept. 14, 1886, L. Lenaerts.
No. 385,863, July 10, 1888, M. G. Kellogg.
No. 388,454, Aug. 28, 1888, C. E. Scribner.
No. 389,758, Sept. 18, 1888, A. W. Morrell.
No. 396,522, Jan. 22, 1889, O. P. Loomis.
No. 414,310, Nov. 5, 1889, C. D. Haskins and C. E. Scribner.
No. 416,275, Dec. 3, 1889. C. E. Scribner.
No. 416,809, Dec. 10, 1889, C. E. Scribner.
No. 428,095, May 20, 1890, O. W. Hart.
No. 430,747, June 24, 1890, J. J. O'Connell.
No. 433,047, July 29, 1890, C. E. Scribner.
No. 438,301, Oct. 14, 1890, T. A. Edison.
No. 438,982, Oct. 21, 1890, F. G. Beach.
No. 447,177, Feb. 24, 1891, T. M. Edwards.
No. 460,199, Sept. 29, 1891, J. P. Cushing and W. J. Kelly.
No. 463,544, Nov. 17, 1891, F. A. Pickernell.
No. 466,702, Jan. 5, 1892. F. A. Pickernell.
No. 474,323, May 3, 1892, H. V. Hayes.
No. 481,120, Aug. 16, 1892, F. A. Pickernell.
No. 486,507, Nov. 22, 1892, C. E. Scribner.
No. 494,385, March 28, 1893, F. A. Pickernell and F. W. Dunbar.
No. 495,087, April 11, 1893, E. J. Hall.
No. 502,660, Aug. 1, 1893, F. W. Dunbar.
No. 503,099, Aug. 8, 1893, C. E. Scribner.
No. 503,115, Aug. 15, 1893, W. D. Allison.
No. 505,188, Sept. 19, 1893, J. J. Carty.
No. 507,565, Oct. 31, 1893, T. Spencer.
No. 509,367, Nov. 28, 1893, F. W. Dunbar and S. C. May.
No. 512,399, Jan. 9, 1894, C. E. Scribner.
No. 515,531, Feb. 27, 1894, J. J. O'Connell.
No. 517,243, March 27, 1894, J. I. Sabin and W. Hampton.
No. 518,333, April 17, 1894, J. I. Sabin and W. Hampton.

No. 518,334, April 17, 1894, **J. I.** Sabin and **W.** Hampton.
No. 520,083, May 22, 1894, **J. I.** Sabin and **W.** Hampton.
No. 528,040, Oct. 23, 1894, T. Spencer.
No. 537,967, April 23, 1895, W. Coonan.
No. 539,099, May 14, 1895, G. Taintor.
No. 542,066, July 2, 1895, C. E. Scribner.
No. 543,901, Aug. 6, 1895, C. E. Scribner.
No. 544,546, Aug. 13, 1895, J. J. O'Connell.
No. 548,228, Oct. 22, 1895, C. E. Scribner.
No. 559,411, May 5, 1896, C. E. Scribner and **F. R.** McBerty.
No. 559,616, May 5, 1896, C. E. Scribner.
No. 560,761, May 26, 1896, J. S. Stone.
No. 562,906, June 30, 1896, F. R. McBerty.
No. 563,073, June 30, 1896, C. E. Scribner.
No. 563,323, July 7, 1896, C. E. Scribner.
No. 574,006, Dec. 29, 1896, C. E. Scribner.
No. 574,221, Dec. 29, 1896, C. E. Scribner.
No. 587,406, Aug. 3, 1897, C. E. Scribner.
No. 618,137, Jan. 24, 1899, C. E. Scribner.
No. 641,721, Jan. 23, 1900, F. R. McBerty.
No. 667,463, Feb. 5, 1901, C. E. Scribner.
No. 680,879, Aug. 20, 1901, F. R. McBerty.
British patent No. 2,748, 1889, A. R. Bennett.
British patent No. 11,549, 1895, J. Kingsburg.

The Circuit Court held, that the invention claimed in the letters patent in suit were patentable. But on reference to patent No. 574,006, issued four and one-half years previously, to the same patentee, the patent in suit was held to be a double patent. The court also held that in view of the narrow scope to be given to the patent in suit, the system used by appellees was not an infringement. Accordingly the bill was dismissed.

The further facts are stated in the opinion.

Edward Rector and Geo. P. Barton, for appellant.

Chas. A. Brown, for appellees.

Before GROSSCUP and BAKER, Circuit Judges, and LANDIS, District Judge.

GROSSCUP, Circuit Judge, after stating the facts, delivered the opinion:

Claim No. 6 may be taken as a single comprehensive statement of the invention claimed. That claim is as follows:

6. The combination with a telephone line, of a relay responding to currents in the line, a local circuit including a source of current, a resistance-coil, and a line-signal lamp, controlled by the relay, the line-signal being associated with a spring-jack of the line, a connecting plug for use with the spring-jack, a clearing-out-signal lamp associated with the connecting-plug, and switch-contacts adapted to close a shunt-circuit through the clearing-out-signal lamp about the line-signal lamp and the contact-points of the relay when the plug is inserted into the spring-jack, substantially as described.

This claim when applied to the art shows a combination within a combination, with means connecting the inner with the greater; and it is essential, in determining the scope of the patent, to keep in mind as separate entities, this greater combination, this inner combination, and the specific means that connect them.

The greater combination is the telephone line, fully equipped with the signaling system described.

The inner combination is the signaling system—two signal lamps so placed in parallel branches of a local circuit, that when either branch is open, the lamp on the other will be luminous, and therefore a signal, but when both branches are closed, both lamps will be "effaced," and therefore neither a signal; this concept being mechanically embodied in the line lamp associated with a spring jack of the line, the connecting plug for use with the spring jack, the supervisory lamp associated with the connecting plug, the switch contacts, and the resistance coil controlling the flow to the lamps.

The means connecting the inner combination with the greater combination is the relay responding to currents in the main line, whereby the local circuit is connected electrically with the main line.

We see no invention in the mere selection of this connecting means—the connecting of the inner combination with the greater combination by means of the relay—relays to put electric lamps on local circuits into connection with the main lines of electric lighting systems being in common use.

We see no invention in the mere selection, as signals, of electric lamps. The electric lamp, in the patent sense, is as old as sunlight. So also the placing of two or more lamps upon parallel branches of the same circuit. We do not think that the mere adaptation to a telephone line of electric lamps as signals—apart from the special concept that the lamps should be so balanced, that on a massed current each lamp would be luminous, while on a divided current both would be non-luminous, and the mechanical embodiment of that concept—is patentable invention. The only new element, therefore, in the combination patented, is the concept named, together with the mechanical means in which it is embodied. But here again, when we come to look at the prior art, there must be a further elimination.

That concept, to repeat what has been said before, is the so placing of two signal lamps in parallel branches of the same circuit, that when either branch is open, the lamp on the other will be luminous, but when both branches are closed, neither will be practically luminous—a concept proceeding upon this thought, that a current might be so predetermined or pitched, that going through one of two lamps of identical character it would be sufficient to make that lamp practically luminous, but being divided in equal parts, between the two lamps, it would be so insufficient that neither lamp, practically, would be luminous.

Now, except for this specific concept of the difference of effect upon identical lamps of a current massed, and a current divided, and the adaptation to its purpose of an otherwise old mechanical dress, the whole mechanism of the patent in suit is old—being fully set forth in Scribner's patent, No. 559,616, issued five years previously. In this earlier patent Scribner combined with a telephone line, indicator signals. The combination embodied a source of current, a resistance coil, a line signal associated with the spring jack on the line, a connecting plug for use with the spring jack, a supervisory signal associated with the connecting plug and switch contacts, all similar to

those in the patent in suit. The earlier patent included, also, the closing of the two circuits on which the signals were located, at the same time and to the same current of electricity, whereby, theoretically at least, the current was divided. There is, however, this difference, that whereas in the patent in suit each lamp presents an equal resistance, whereby the current approximately is equally divided, in the earlier patent the signals present differing resistance so that, though the current may have traveled in differing voltage through both signals, the smaller current was so small that the signal placed upon it did not operate. Indeed, while Scribner, in the earlier patent, may not have contributed to electrical knowledge the exact concept embodied in the inner combination of the patent in suit, he did contribute there the thought that led up to his later thought; and, what is certainly to the point, the precise mechanism, save as such mechanism is modified by the substitution of electric lamps for indicator signals, and save also that for signals presenting differing resistances, he substituted, in the later patent, signals of identical resistance.

Here, then (considering that the mere choice of lamps as signals is not patentably a new thing), is the only element of the patent in suit not found in the previous art: Identity of signal lamps, and an exact predetermined pitch of current, the identity of the lamps being essential because any difference of resistance would break the fine balancing of current upon which the whole conception rests; and a predetermined pitch of current, neither too high nor too low, being essential, because a current pitched too high, though it might make the lamps more luminous, would not, when divided, efface the lamps, while a current pitched too low, while when divided making the effacement more complete, would not, when massed, give sufficient luminosity.

The new element thus bounded and identified must not be lost sight of; for unless it is found substantially in appellees' device, the combination constituting appellees' device cannot be held to be an infringement.

The patent in suit, based on this element, had its defects. Theoretically, an equal division of current cuts such current into halves. But practically, the current being divided, the resistance is so diminished that each line of the divided circuit gets considerably more than one-half of the current massed. The effect of this is, that there is not such a wide difference between the luminosity of the lamp fed by the current massed and the current divided, as the inventor perhaps anticipated; so that, accessory to making the signals practical, these three things at least were added: The lamp was covered with a lense, not solely for radiating the light, but to partially smother it; the uniformity of the lamps had to be maintained—that is, the lamps not only had to be uniform when put in, but replaced the moment that, through use, a difference in uniformity developed; and the batteries had to be kept at a given voltage—a variation of voltage or diminution of the flow, destroying the fine balance upon which alone the luminosity and non-luminosity of the lamps are maintained.

That these defects were actual is shown by the fact that the patent in suit has not gone into general use. They are apparent in the exchange at Worcester, Mass. Of this exchange McBerty, one of appellant's witnesses says:

"The voltage is kept nearly constant. In order to accomplish this, duplicate sets of battery are provided, one of which is charged while the other is being used. When a lamp is discovered in a switchboard which grows somewhat red because of high resistance, it is replaced by a normal lamp. At midday when the sunlight is strong, a translucent shade is drawn over the skylight."

Again he says:

"I very early became aware of the difficulty in producing uniform lamps, and of maintaining uniformity in the battery voltages. I also studied other ways of accomplishing the same result, without the addition of mechanism and circuits. One way consisted in putting a filament of green gelatin, or glass, behind the opal. This filament obstructed the red light emanating from the dull growing filament, while it did not obstruct the white light of the filament when fully illuminated."

It was, we believe, just to avoid these defects—to give to the signaling more robustness—that electrical thought went on thinking and experimenting, developing, among other things, the system used by the appellee.

That system is connected to the general telephone line by means of the relay, just as appellant's system is. But this does not make it an infringement; for, as already indicated, the mere insertion of such signaling system into a general telephone line, and the means by which that insertion is brought about, were, in the field of electric mechanics, as shown by the previous art, so obvious, that they constitute separately, no part of whatever was patentable in the patent in suit.

The appellee's system employs the device of a signaling lamp associated with a supervisory lamp, each being on a circuit alone at times, and both being upon a circuit together at times, with the result; that when each is on the circuit alone it is a signal, but when both are on the circuit at once, neither are signals; together with the resistance coils, spring jacks, connecting plugs and the like, that mechanically bring this about. But this device, save that the association is on the main line, instead of a local circuit connectable, when signaling is needed, with the main line, and save also that the signal is an indicator instead of a lamp, is present, in all substantial respects, in patent No. 559,616; and as already stated, the mere substitution of an electric light for an indicator, and the mere placing of the signaling device on a local, instead of the main line, do not constitute patentable invention. But even if they did, it would be of no consequence in this suit, unless the inner element—the so placing of the lamps that they followed the law of the patentee's conception—is to be found substantially in appellee's combination. And that brings us to the system used by appellee.

The following diagrams show the appellee's system (1) in normal condition; (2) subscriber calling; (3) conversation taking place, and (4) disconnecting signal:

Fig a - normal Condition      Fig b - Subscriber "Calling"

Fig C - Conversation taking place      Fig d - Disconnecting Signal

When the subscriber in appellee's system removes his telephone from its hook, the calling relay i attracting the armature k" closes the circuit from the battery through the resistance coil e, and the signal lamp n as shown by the heavy lines. The whole current being through n, the lamp lights up and becomes the signal..

The operator now inserts the plug into the corresponding spring jack, thus closing the plug contact. Now the circuit being divided, if the lamps were of equal resistance, the current would be divided, as in the patent in suit, both lamps becoming partially non-luminous. But in appellee's system, appellee's lamp v, interposing very much less resistance than lamp n, and the current taking the path of least resistance, the current practically passes almost altogether through lamp v, according to the heavy lines in Figure 3; leaving a small portion, if·any, to pass through lamp n, and thus electrically short circuiting n, just as signal h in patent No. 559,616, is electrically short circuited by interposing in the path of the current a resistance higher than that through signal e.

This diversion of current through v does not light the lamp, however, because v being a lamp of different character from n, it requires a voltage greater than the whole voltage of the current when subjected to the resistance e, the supervisory lamp in both cases considered and be in circuit. So the circuit through the resistance coil g is introduced, closed by the subscriber replacing his telephone; and g interposing a less resistance than e, a voltage enough greater than the voltage through e alone is obtained that the lamp v is lighted.

Now compare this with what we have found to be the actual con-

cept of the patent in suit. The patent in suit employs a single predetermined pitch of current, as it reaches the lamps through resistance m, and would operate under no other conditions; the appellees' system carries a current varying according to the lamps to be lighted, and would operate under no other conditions. The patent in suit provides for extinguishment by an approximately equal division of the current, and looks in pursuit of this purpose to no other provision; the appellees' system provides for extinguishment of the line lamp by practically short circuiting, and the supervisory lamp by a high candle power, and would operate in no other way. The patent in suit involves the necessity of lamps of identical character—lamps so delicately matched that in dividing the current, the flow through each lamp will be equal—and the patent in suit would operate under no other conditions; the appellee's system employs lamps so differing from each other in character, that any close balancing of the lamps is a matter that is not involved. In the patent in suit, the current must be pitched to almost an exact predetermined point—involving battery action constantly up to a certain point, and a resistance that is constant; the operation of appellee's system cannot be said to hinge in the least, upon pitch of current. When we have thus passed over all that is old in the art, reaching the actual concept covered by the patent in suit, the differences pointed out become fundamental. They mark two substantially differing lines of thought. And they have resulted in two distinct signaling systems, in the one of which the defects in the other have been escaped chiefly by avoiding all in it that was new, while readapting certain things in it that were old. This, in our judgment, differentiates the essential element under consideration in appellee's device, from the element that gives to the patent in suit any patentable invention, if indeed, it have any patentable invention; wherefore it follows that the one combination is not an infringement upon the other.

The audible test being governed by the same considerations, need not be further discussed.

The decree of the Circuit Court is affirmed.